UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex. rel* SCOTT KRELLER, and SCOTT KRELLER, individually<br><br>Plaintiffs,<br><br>v.<br><br>LEONIE INDUSTRIES, LLC, d/b/a LEONIE, d/b/a THE LEONIE GROUP<br><br>Defendant. | **FILED UNDER SEAL**<br><br>Case No: 1:17-cv-01342 (KBJ) |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. Plaintiffs, The United States of America, by and through Qui Tam Relator Scott Kreller ("Relator" or "Mr. Kreller") and on his own behalf, allege that Defendant Leonie Industries, LLC, d/b/a Leonie (Arlington Co.), d/b/a The Leonie Group ("Leonie"), through its employees, agents, and/or representatives, acting on behalf of Leonie, defrauded The United States of America by billing the United States of America millions of dollars for services that were never rendered by Leonie in violation of the False Claims Act, 31 U.S.C. §3729, *et seq.* Plaintiff Scott Kreller also brings a claim of retaliation against Leonie on his own behalf, in violation of 31 U.S.C. 3730(h)(1).

2. Venue is proper pursuant to 28 U.S.C. §1391(b), (c) and 31 U.S.C. §3732(a), as Leonie regularly conducts business within this District; Leonie contracted with the United States government agencies in the District of Columbia to provide services to the United States

1

government; the fraudulent and false invoices were sent to the United States of America within this District; and Leonie is subject to this District's personal jurisdiction.

3. The facts and circumstances of Leonie's violations of the False Claims Act have not been publicly disclosed in a criminal, civil, or administrative hearing, nor in any congressional, administrative, or report, hearing audit or investigation by the General Accounting Office or Auditor General, nor have these facts been made public in the news media.

4. Relator is the original source of the allegations in the Complaint.

**PARTIES**

5. Relator was, at all times relevant, a resident of the District of Columbia and a citizen of the United States of America. Relator was the Global Operations Director from November 2011 through May 2016. Relator was the President of Leonie from May 2016 through May 2017. At all times relevant, Relator had direct knowledge of the falsified billings submitted to the United States government. At all times relevant, Relator worked for Leonie as the President from the District of Columbia.

6. Leonie is a California Limited Liability Company organized as a government subcontractor, producing propaganda for the United States Government in Afghanistan. Leonie Industries, LLC's principal place of business, as it represented in its government contracts, is 1200 G Street NW, Suite 813, Washington, DC

7. Leonie holds itself out to the public as "a highly specialized communications, analysis, information systems, cyber, and research operations firm."

**FACTS**

8. Beginning in 2008 through 2015, Leonie was the Pentagon's top propaganda producer in Afghanistan, billing hundreds of millions of dollars to the United States Government for its propaganda services.

9. From 2009 to 2013, Leonie provided services to the Pentagon under its Afghanistan Psychological Operations or "PSYOP Contract".

10. In particular, Leonie rendered services under a "Dissemination Contract Line Item Number" or "Dissemination CLIN" to bill the Department of Defense for television airtime, satellite television airtime, billboard advertising space, and other promotional items disseminated to the Afghan people, as part of the PSYOP Contract.

11. From 2010 to 2014, Leonie billed the Department of Defense ("DOD") approximately $119,368,536 for the Dissemination CLIN, yet Leonie cannot verify that any of the work billed for under the Dissemination CLIN was ever completed during that time period. Leonie's profit margin was 35.5%, which equated to approximately $42,375,830 in gross profits for Leonie for work which had never been verified.

12. At all times material hereto, Leonie was aware that it had no mechanism in place or ability to verify that the work for which it billed under the Dissemination CLIN was actually ever performed, *i.e.* that the television, radio, or billboard advertisements were ever disseminated to the Afghan populace.

13. Despite knowing that the vast majority of the work for which it billed the Department of Defense was never actually performed, Leonie continued to bill the United States Government hundreds of millions of dollars for these services through 2013.

14. In 2014, Leonie began to monitor and verify its media placements in Afghanistan under the Dissemination CLIN.

15. From 2014-2016, on average less than 75 percent of requested television placements were actually aired in Afghanistan and less than 45 percent of radio placements were

actually aired during the same period. Television and radio comprised more than 95 percent of the monthly Dissemination CLIN billed from 2014 to 2016.

16.     At all times material hereto, the owners, officers, managers, and employees, of Leonie knowingly submitted false bills for services to the United States of America for payment.

17.     At all times material hereto, the owners, officers, managers, and employees, of Leonie knowingly submitted false bills for services that they could not or were not actually providing to the United States of America for payment.

18.     On or about January 15, 2014, Military Information Support Task Force – Afghanistan ("MISTF-A") via its commanding officer, requested that Leonie provide methods and results to verify that 100 percent of Leonie's disseminated "products" (e.g. TV spots, radio, billboard) billed to the DOD had actually been aired or broadcast.

19.     On or about March/April 2014, Leonie began recording the media outlets it utilized and began validating all airtime purchased on behalf of DOD. This monitoring/validating continued until the end of the PSYOP Contract in May 2016.

20.     Once Leonie began tracking the dissemination products it billed to the government, it knew that on average less than 75 percent of the television placements that Leonie billed to DOD were actually aired in Afghanistan. For radio, on average less than 45 percent of radio placements were actually aired during the same period. Those two products – television and radio – comprised more than 95 percent of the monthly billings under the CLIN billed from 2014 to 2016. In other words, the vast majority of the dissemination products that were billed to the United States Government were never actually aired.

21.     The final invoice for the PSYOP Contract was for $4.5 million. Leonie was not able to validate that any of the broadcasts for which Leonie sought payment actually occurred.

22. Mr. Kreller faced pressure from the owners to submit the final invoice on an almost weekly basis from June 2016 until his firing in February 2017.

23. Mr. Kreller was asked by a member of Leonie to submit the invoice for payment by the United States Government. Mr. Kreller knew that $3.8 million of the $4.5 million invoice was for services that Leonie has already billed the United States Government. Mr. Kreller refused to participate in the fraudulent billing. As a result, Mr. Kreller was terminated in retaliation by Leonie.

24. Leonie was aware that it was billing the United States Government for services it was not rendering or had already rendered and billed to the United States Government yet continued to bill millions of dollars each month under the CLIN.

### Count I – False Claims Act

25. Relator incorporates the preceding paragraphs as though fully set forth herein.

26. Leonie, through its employees and/or agents, submitted false information the United States Government to be compensated for services that it did not render in violation of 31 U.S.C. §3729.

27. The False Claims Act imposes liability against a person or entity that:

   (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

   (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

   (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

28. Leonie, through its employees, agents, and/or representatives knowingly (as that term is defined by 31 U.S.C. §3729(b)) submitted claims for reimbursement to the Department of Defense for services that Leonie did not provide in violation of 31 U.S.C. §3729(a)(1)-(2).

29. Leonie, through its employees, agents, and/or representatives conspired and worked in concert and/or through agreement to submit claims for reimbursement to the Department of Defense for services that never occurred in violation of 31 U.S.C. §3729(a).

WHEREFORE Relator requests the following relief:

A. Judgment against Leonie for three times the amount of damages sustained by the United States of America, plus a civil penalty of $10,000 for each fraudulent billing submission;

B. 15 to 25 percent of the proceeds of this action if the United States of America decides to intervene and 25 percent if it does not;

C. Relator's attorney's fees and costs;

D. All such other relief the Court deems just and appropriate.

### Count II – Retaliation Under the False Claims Act

30. Relator incorporates the preceding paragraphs as though fully set forth herein.

31. Relator was pressured by Leonie on an almost weekly basis to submit the final invoice for the PSYOP Contract, which was for $4.5 million. Relator and Leonie knew that $3.8 million of the $4.5 million invoice was for services that Leonie has already billed the United States Government. Relator refused to participate in the fraudulent billing and, Relator reported to Leonie that the invoice was fraudulent and should not be submitted to the United States Government for payment.

32. Relator's refusal was an effort to stop Leonie from submitting a fraudulent invoice to the United States Government.

33. Leonie was aware that Relator's refusal to submit the final invoice for the PSYOP Contract was because by submitting the fraudulent invoice, Leonie would be violating the False Claims Act.

34. Relator's refusal to submit a fraudulent invoice to the United States Government was protected activity under 31 U.S.C. 3730(h)(1).

35. As a result of Relator engaging in protected activity under 31 U.S.C. 3730(h)(1), Relator was put on administrative leave on or about February 22, 2017 and was terminated on or about March 3, 2017 in retaliation by Leonie.

36. Relator was told by a Leonie board member that he was fired because he refused to submit the final invoice to the United States government for payment.

WHEREFORE Relator requests judgment against Leonie, awarding reinstatement, two times the amount of his back pay, interest on his back pay, compensation for special damages, litigation costs, and reasonable attorney's fees, and awarding any other additional statutory or equitable relief necessary.

## JURY AND TRIAL DEMAND

Relator hereby demands a trial by jury with respect to each claim in this First Amended Complaint.

Date: February 11, 2020

Respectfully submitted,

KLAPROTH LAW PLLC

_____
Brendan J. Klaproth (D.C. Bar No. 999360)
bklaproth@klaprothlaw.com
Jesse C. Klaproth (D.C. Bar No. PA0063)
jklaproth@klaprothlaw.com
2141 Wisconsin Ave NW
Suite M3
Washington, DC 20007

T: 202-618-2344<br>
F: 202-618-4636

*Attorneys for Relator*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the Amended Complaint to be served on counsel for the United States Government.

Date: February 11, 2020

Brendan J. Klaproth